AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California



| United States of America | |
|---|---|
| v. | Case No. |
| HILTON HOPKINSON, | |
| Defendant. | 20MJ01136 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On a date no earlier than on or about June 29, 2010, and no later than on or about September 2, 2010, in the County of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1073 | Unlawful Flight to Avoid Prosecution |

This criminal complaint is based on these facts: *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Dustin B. Drace, Special Agent, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/20/2020

_____
*Judge's signature*

City and state: Los Angeles, California

Hon. John E. McDermott, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Brian R. Faerstein x3819

**AFFIDAVIT**

I, DUSTIN B. DRACE, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for defendant HILTON HOPKINSON ("HOPKINSON") for Unlawful Flight to Avoid Prosecution, in violation of Title 18, United States Code, Section 1073.

2. The information contained herein is based on my participation in this investigation and my training and experience, as well as my conversations with other law enforcement officers and my review of various law enforcement documents. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AGENT DUSTIN B. DRACE

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Los Angeles Field Office and have been so employed for over two years. Prior to being assigned to the Los Angeles Field Office, I received approximately 21 weeks of full-time, formalized education and training at the FBI Agent Training Academy in Quantico, Virginia. This training included but was not limited to conducting fugitive investigation, drug identification,

1

detection, interdiction, and money laundering techniques. I have also received on-the-job training from Special Agents of the FBI who have significant investigative experience and are recognized experts in their respective fields of investigation. I have been a member of the FBI Joint Terrorism Task Force ("JTTF") for approximately one year. In that capacity, I investigate National Security matters, International Terrorism, and Domestic Terrorism.

4. I have assisted with fugitive investigations with the joint FBI/Los Angeles Police Department Fugitive Task Force for over one year. In that capacity, I have participated in numerous fugitive investigations, and have personally participated in approximately one dozen fugitive arrests.

5. Based upon my training and experience with the FBI as well as conversations that I have had with other, more experienced agents and law enforcement officers who specialize in fugitive investigations, I am familiar with the methods utilized by fugitives to avoid detection and capture by law enforcement. I have also spoken with federal agents and other law enforcement officers about their experiences and the results of their investigations and interviews. Through my conversations with these agents and other law enforcement officers, coupled with my investigation of National Security subjects attempting to evade detection by law enforcement, I am knowledgeable in the methods and modes of fugitives to include the techniques, tactics and procedures they employ to avoid arrest.

## III. STATEMENT OF PROBABLE CAUSE

6. Based on my discussions with other law enforcement officers and my review of law enforcement reports, including an October 31, 2011 Los Angeles Police Department ("LAPD") report, I have learned the following facts:

7. On or about June 29, 2010, the LAPD believes that HILTON HOPKINSON ("HOPKINSON") and his girlfriend Jessica Pinzon ("Pinzon") shot and killed David Juarez ("Juarez"). Specifically, according to the LAPD, Juarez was shot and killed while driving his car with three passengers southbound on Saint Andrews Place towards a "T" intersection at Santa Monica Boulevard in Los Angeles, California. From their investigation, the LAPD was able to identify HOPKINSON as the shooter and determine HOPKINSON shot Juarez because Juarez was a rival gang member. After shooting Juarez, HOPKINSON ran back to a waiting gray, four-door Kia Optima. The LAPD later determined that Pinzon was driving the Kia Optima.

8. Later the same day, Norma Pomposo ("Pomposo"), believed to be the sister of Pinzon, received a telephone call from Douglas Pinzon, believed to be the brother of Pinzon and Pomposo. Douglas Pinzon told Pomposo that Pinzon had just barged into his house, slammed the door, and told no one to open it. Douglas Pinzon also told Pomposo that Pinzon had told Douglas Pinzon that HOPKINSON had just shot someone. Pinzon apparently then gathered her belongings and fled the home.

9. On July 7, 2010, the Los Angeles County District Attorney's Office filed a felony complaint charging HOPKINSON

with one count of murder, in violation of California Penal Code Section 187(a), and three counts of attempted murder, in violation of California Penal Code Sections 187(a) and 664. On the same date, a fully extraditable felony warrant was issued by the Superior Court of the State of California, County of Los Angeles, for HOPKINSON, warrant number LACBA37325801, based on the charges in the felony complaint. An amended complaint was later filed on July 28, 2010, adding charges against Pinzon as well.

10. In approximately early July 2010, Pomposo received a telephone call from Pinzon. Pinzon explained that she had been driving her car with HOPKINSON when HOPKINSON shot and killed someone. Pomposo shared the information with her husband David Pomposo, a Los Angeles County Sheriff's Deputy, but David Pomposo was unable to find any information about the shooting.

11. On or about July 22, 2010, Pomposo told the LAPD that she was told by Pinzon that HOPKINSON and Pinzon were "on the run" from the police. Pinzon begged Pomposo for money to help HOPKINSON and Pinzon escape to Nevada. According to Pomposo, Pinzon arranged to have her gray Kia Optima painted white to avoid detection by law enforcement.

12. On or about September 2, 2010, Pomposo advised the LAPD that she had been contacted by Jasmine Cifuentes ("Cifuentes"), believed to be the daughter of Pinzon. Cifuentes requested approximately $450 from Pomposo to send to Pinzon to help Pinzon and HOPKINSON get to Honduras. Pomposo believed

from her conversation with Cifuentes that HOPKINSON and Pinzon were in Tijuana, Mexico and, later, in Honduras.

13. On or about December 23, 2010, Pomposo advised the LAPD that Pinzon had left HOPKINSON and returned to her native country of Guatemala. Pomposo further advised that HOPKINSON remained in Honduras.

14. In approximately February 2016, the FBI Legal Attaché in San Salvador, El Salvador received information from the United States Department of State that an individual named "Hilton Humberto Hopkinson Castellanos" applied for a job at the United States Embassy in Honduras at some point in the recent past. A photo on the Honduran identification card included with this job application appeared to be similar in appearance to photos of HOPKINSON previously obtained by the LAPD. In addition, the date of birth (March 15, 1992) listed on the curriculum vitae submitted with this job application is the same as HOPKINSON's date of birth. Thus, based on these facts, I believe that "Hilton Humberto Hopkinson Castellanos," believed to be residing in Honduras in or about February 2016, is the same person as HOPKINSON.

15. On or about November 25, 2016, a Provisional Arrest Warrant was obtained in Guatemala for the arrest of Pinzon. Pinzon was located and arrested on November 26, 2016, in the municipality of San Miguel Petapa, Guatemala.

16. More recently, on April 17, 2019, the LAPD received information from a concerned citizen in Honduras about HOPKINSON. The concerned citizen advised that HOPKINSON was

5

located in Honduras and that HOPKINSON may travel to Guatemala. The concerned citizen recognized HOPKINSON from a photo of HOPKINSON listed on the LAPD's website.

## CONCLUSION

17. For all the reasons described above, I believe there is probable cause to believe that HILTON HOPKINSON has violated Title 18, United States Code, Section 1073 (Unlawful Flight to Avoid Prosecution).

DUSTIN B. DRACE
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before
me this 12 day of March 2020.

HONORABLE JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE